**DWIGHT C. HOLTON, OSB#09054**
United States Attorney
District of Oregon
**JENNIFER J. MARTIN, OSB # 852851**
Jennifer.Martin@usdoj.gov
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
         Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 11- CR- 202 MO |
| v. | **GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION** |
| **TU NGOC TRAN, et al.** | |
| **Defendants.** | |

The United States of America, by Dwight C. Holton, United States Attorney for the District of Oregon, through Jennifer J. Martin, Assistant United States Attorneys, seeks the defendant's detention in this case. Defendant Tu Ngoc Tran and his co-conspirators, are charged in a conspiracy for manufacturing and distributing more than 1000 marijuana plants, and money laundering. Defendant Tu Ngoc Tran faces a ten year mandatory minimum sentence in the drug trafficking charge. There is a rebuttable presumption that there are no conditions or combination of conditions that will reasonably assure the presence of the defendant and the safety of the community. This presumption arises because of the nature and severity of the charges against defendant. *See* 18 U.S.C. §§ 3142(e), (f)(1).

This case arises out of the defendant's illegal cultivation and sale of large quantities of marijuana, and his attempts to use state medical marijuana laws in Oregon and Washington as

shields preventing law enforcement officers from discovering his organization's criminal conduct and the assets derived from, and used in, the large scale cultivation and sale of marijuana.

Defendant Tu Ngoc Tran and co-defendant Minhthy Ngoc Nguyen were arrested at the Canadian border re-entering the United States on June 26, 2011.

Defendant Tu Ngoc Tran and co-defendants Minhthy Ngoc Nguyen and Huy Ngoc Nguyen conspired together to grow and distribute marijuana from at least three residences in Oregon and Washington. All four defendants conspired to hide assets used and derived from the illegal distribution of marijuana. Co-defendants Huy Anh Nguyen and Kiet Anh Nguyen are also charged with making false statements on residential loan applications to conceal assets for defendant Tu Ngoc Tran and co-defendant Minhthy Ngoc Nguyen.

For the reasons set forth below, the government submits that the defendant Tu Ngoc Tran has not and can not rebut the statutory presumption of detention applicable to this case. The defendant poses both a risk of flight and a danger to the community if released and should be detained pending trial.

**A.    Relevant Factual Background of Marijuana Conspiracy Investigation, Execution of Search Warrants**

In late 2010, law enforcement officers from the Multnomah County Sheriff's Office Special Investigations Unit (SIU) and the Clark Skamania Task Force (CSTF) in the Western District of Washington received an anonymous letter describing how defendant Tu Ngoc Tran and others grew and sold marijuana, while shielding themselves behind state medical marijuana laws. The officers corroborated the information in the anonymous letter, identifying several

**PAGE 2 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

locations in Portland, Oregon, and Vancouver, Washington, used by defendant Tu Ngoc Tran and other members of his conspiracy to grow and sell marijuana.

On December 21, 2010, SIU and CSTF officers executed state search warrants at three locations in Portland, Oregon and Vancouver, Washington used by members of the conspiracy to grow and package marijuana for sale.

1.   **The Rocky Butte marijuana growing operation**

At the time the search warrant was executed, defendant Tu Ngoc Tran, co-defendant Minhthy Ngoc Nguyen and their minor children resided at 2915 NE Rocky Butte Road, Portland, Oregon. Officers executing the search warrant at the Rocky Butte residence entered through the garage entrance into the main floor of the residence, where they noticed an overwhelming odor of marijuana. The main floor of the residence contained a room modified to be used as a marijuana packaging room, which contained more than 50 pounds of marijuana packaged for redistribution, a money counter, packaging materials, and several pairs of men's and women's sandals in different sizes. Officers noted that children's toys and a Nintendo Wii were found in the area just outside the marijuana packaging room. Inside the marijuana packaging room, officers found a staircase lading down to an indoor marijuana cultivation room, containing more than 220 marijuana plants, and evidence of prior marijuana cultivation, including discarded pots and potting soil.

Officers found utility, insurance and other bills addressed to co-defendant Minhthy Ngoc Nguyen amounting to well over a thousand dollars a month.

2.   **Post-Miranda admissions by defendant Tu Ngoc Tran.**

In an interview following an advisal and waiver of Miranda rights, defendant Tu Ngoc Tran told law enforcement officers that he was self-employed, and that he purchased items in

Vietnam and sold them in the United States, although he had not sold anything in this manner for about a year. Defendant Tu Ngoc Tran told officers that he and co-defendant Minhthy Nguyen were renting the Rocky Butte residence for $3,000 per month.

Defendant Tran told Deputy Zwick that he had a medical marijuana card to grow marijuana, and that he is a caregiver for 10 patients. Detective Zwick knew from previously contacting the Oregon Medical Marijuana Program (hereinafter OMMP) that defendant Tran was registered as a patient and grower for himself only; and that he was not a caregiver for anyone else. OMMP representatives also confirmed that 2915 NE Rocky Butte Road, Portland, Oregon, was not registered as a marijuana grow site with the OMMP. Defendant Tran claimed that he was allowed to grow 25 plants per patient, and that with 10 cards, he was allowed to grow 250 plants. Defendant Tran claimed that people gave him OMMP applications and asked him to grow marijuana for them. He also claimed that these patients gave him donations for the marijuana he provided, and that was how he paid his bills.

Portland Police Detective Phil Maynard reviewed a packet contained ten copies of OMMP applications[1] found in the marijuana growing and packaging rooms. Three of the applications were for defendant Tu Ngoc Tran and co-defendants Minhthy Ngoc Nguyen, and Huy Anh Nguyen, all showing each of the three defendants to be a OMMP patient, and a marijuana grower, with the marijuana grow site listed as 1030 NE 102, Apt. 18, Portland,

---

[1]. Under Oregon state law, there does not appear to be an effective mechanism for confirming the validity of an OMMP application or a card, in order to prevent a drug trafficker from concealing illegal cultivation and distribution of marijuana under the guise of growing, providing or possessing marijuana for OMMP cardholders. If the court does not detain defendant Tran, the court should order that he and the co-defendants have no participation in the Oregon Medical Marijuana Program.

**PAGE 4 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

Oregon, an entirely different address. Investigators later confirmed there was no marijuana grow site at that location.

None of the other seven copies of OMMP applications listed defendant Tu Ngoc Tran or co-defendants Minhthy Ngoc Nguyen or Huy Anh Nguyen as either caregivers or the person responsible for the marijuana grow site. None of the other seven copies of OMMP applications listed 2915 NE Rocky Butte Road as the marijuana grow location. Although defendant Tran claimed to be he was caregiver for all of the individuals listed on the applications, he is not named on any of the applications as such, and he could not name any of the seven individuals listed on the applications, stating, "I don't know who they are." He refused to tell law enforcement officers where he got the copies of the OMMP applications.

After the execution of the search warrants, law enforcement officers interviewed a person identified on four of the seized applications as a grower or caregiver. The grower/caregiver advised the officers that defendant Tu Ngoc Tran and co-defendants Minhthy Ngoc Nguyen and Huy Anh Nguyen were not growers, caregivers or patients associated with at least five of the OMMP applications found in defendant Tu Ngoc Tran's residence. The grower also advised officers that some documents had been stolen from his car earlier, and that the OMMP applications might have been among the documents stolen from his car.

Officers also found and interviewed four of the individuals listed as patients in the copies of the OMMP applications, who confirmed that they did not know defendant Tu Ngoc Tran and co-defendants Minhthy Ngoc Nguyen or Huy Anh Nguyen, and had no association with them. All five individuals confirmed that they never provided any donations or other payment to defendant Tu Ngoc Tran or to co-defendants Minhthy Ngoc Nguyen or Huy Anh Nguyen.

**PAGE 5 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

### 3. Post-Miranda admissions by co-defendant Minhthy Ngoc Nguyen

Co-defendant Minhthy Ngoc Nguyen initially told investigators that she did not know they were growing marijuana in the residence - she claimed she thought that the odor was incense. She later said that she got a medical marijuana card at defendant Tu Ngoc Tran's direction and that she used to use marijuana in tea in the mornings for headaches, but that she has not done so in a long time because of her job.

She told investigators that she was employed at an area hospital, and that she brought home approximately $3,000 a month from her employment, where she has held a responsible position in the accounting department for a number of years. She confirmed that the monthly rent for 2915 NE Rocky Butte Road, Portland, Oregon, was $3,700 per month, although she refused to tell officers who owned the residence. Co-defendant Minhthy Ngoc Nguyen agreed that the household expenses far exceeded her legitimate income, and she told officers that defendant Tu Ngoc Tran would give her money to pay the bills. She initially said that she did not know the source of the money that he gave her to pay the bills. At another point in the interview, she told officers that she thought he worked in a nail salon.

Co-defendant Minhthy Ngoc Nguyen told investigators that she was an OMMP cardholder, and that she had obtained her medical marijuana card at defendant Tu Ngoc Tran's direction. She said that defendant Tu Ngoc Tran told her which doctor to see in order to obtain her OMMP card[2]. The OMMP records found at the Rocky Butte residence reveal that on April 15, 2010, co-defendant Minhthy Ngoc Nguyen obtained an Attending Physician's Statement from an ophthalmologist working for the Hemp & Cannabis Foundation, who recommended that

---

[2]The OMMP requires an "Attending Physician's Statement" listing a qualifying debilitating medical condition as part of the application for an OMMP registration card.

**PAGE 6 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

she use marijuana for "agitation due to Alzheimer's disease[3]," as well as for headaches, and chronic neck, shoulder and back pain.  Co-defendant Minhthy Ngoc Nguyen is a young woman with a responsible job who does not appear to suffer from Alzheimer's disease, and did not complain of agitation from Alzheimer's disease in hte application.  It is unclear whether defendant Tu Ngoc Tran directed this entry be made in the Attending Physician's Statement, or if it was generated by co-defendant Minhthy Ngoc Nguyen or whether it was generated purposively or erroneously by the ophthalmologist working for the  Hemp & Cannabis Foundation.  The form signed by the ophthalmologist notes that co-defendant Minhthy Ngoc Nguyen resided at the Rocky Butte residence in Portland, Oregon.

      Officers found additional records showing that on the same day, April 15, 2010, the same ophthalmologist working for the Hemp & Cannabis Foundation signed a form for co-defendant Minhthy Ngoc Nguyen entitled "Documentation of Medical Authorization to Possess Marijuana for Medical Purposes in the state of Washington."[4]  The Washington law requires the patient to be a Washington state resident.  Co-defendant Minhthy Ngoc Nguyen was not a resident of the state of Washington on April 15, 2010, when the ophthalmologist signed the Documentation of Medical Authorization to Possess Marijuana for Medical Purposes in the state of Washington".  A copy of her Oregon driver's license listing her address as 2915 NE Rocky Butte Road,

---

[3]It is noteworthy that "agitation due to Alzheimer's disease" is a condition included in the Oregon Medical Marijuana Act.  The form is a checklist that appears to be used, in part, to track statistics on the reasons for the recommendation for the use of medical marijuana.

[4]"Alzheimer's disease" is not a qualifying condition under Washington state law.  *See* RCW 69.51A.010. In addition, co-defendant Minhthy Ngoc Nguyen told law enforcement officers that she did not, in fact, use marijuana because of her job.  This statement casts doubt on a finding that her submitted condition would meet the criteria in Washington for " intractable pain," defined by the state of Washington to mean pain unrelieved by standard medical treatments and medications. *See* RCW 69.51A.010

**PAGE 7 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

Portland, Oregon, was found with a copy of the Washington state medical marijuana documentation. The court should consider defendant To Ngoc Tran's part in generating this apparently false information to two state agencies in its evaluation of defendant's detention.

Co-defendant Minhthy Ngoc Nguyen confirmed that she owned a residence in Vancouver, Washington, on Bella Vista, and said that she was trying to sell that property. Officers identified the Washington property as 14119 SE Bella Vista Circle, Vancouver, Washington.

### 4. **The Bella Vista marijuana growing operation**

Clark/Skamania Task Force Officers obtained and executed a Washington state search warrant for the residence at 14119 SE Bella Vista Circle, Vancouver, Washington, on December 21, 2011. In executing the search warrant, they used keys from defendant Tu Ngoc Tran and Minhthy Ngoc Nguyen's key rings to open the door of the residence. They found a residence dedicated to cultivating marijuana, with over 230 growing marijuana plants in the residence.

The residence was not habitable as a residence, nor was it used as a residence. It had no furnace. Here too, task force officers found three documents associated with the Washington Medical Marijuana Law[5]. One was for a person born in 1916, one for a person born in 1927, and one was for defendant Tu Ngoc Tran's mother.

---

[5]The Washington Medical Marijuana law is an affirmative defense to state criminal charges. The law does not provide for a registry, making it virtually impossible for law enforcement officers to ascertain the validity of the documentation in order to prevent a drug trafficker from concealing illegal cultivation and distribution of marijuana under the guise of growing, providing or possessing marijuana for others. If the court does not detain defendant Tran, the court should order that he and the co-defendants have no participation in the Washington Medical Marijuana law.

**PAGE 8 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

     5.     **The Pacific marijuana growing operation**

Law enforcement officers executed a third search warrant at co-defendants Huy Anh Nguyen and Kiet Anh Nguyen's residence at 17717 NE Pacific Street, Portland, Oregon, where they found an indoor marijuana grow with 69 marijuana plants, evidence of prior cultivation of marijuana, and a packet of copies of OMMP applications identical to those found at defendant Tu Ngoc Tran's residence at the Rocky Butte location.

     6.     **Post-Miranda admissions by co-defendant Huy Anh Nguyen**

In a post-Miranda interview, co-defendant Huy Anh Nugyen told investigators that the marijuana growing operation at the Pacific Street address grow was not registered with the OMMP. He said that it was defendant Tu Ngoc Tran's idea to for co-defendant Huy Anh Nguyen to get an OMMP card. Defendant Tu Ngoc Tran told co-defendant Huy Anh Nguyen which doctor to see to get the "Attending Physician's Statement" for the OMMP card. Co-defendant Huy Anh Nguyen's OMMP application reflects that he saw a radiologist working for the Hemp and Cannibis Foundation on March 27, 2010. According to Portland Tribune reporter Peter Korn, in 2009, the physician who approved co-defendant Huy Anh Nguyen's application wrote authorizations for 8,760 Oregonians to get medical marijuana cards — far more than any other Oregon physician.

Co-defendant Huy Anh Nguyen admitted that he didn't know any of the people listed on the copies of the OMMP applications. He told investigators that defendant Tu Ngoc Tran just gave him the packet and told him that now he could grow marijuana for all of these people. Co-defendant Huy Anh Nguyen said he took all the processed marijuana he grew to defendant Tu Ngoc Tran's residence at 2915 NE Rocky Butte Road, Portland, Oregon. Co-defendant Huy

**PAGE 9 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

Anh Nguyen said that in return, defendant Tu Ngoc Tran paid co-defendant Huy Anh Nguyen's half of the rent for the house located at 17717 NE Pacific Street, Portland, Oregon.  He said that defendant Tu Ngoc Tran was also supposed to pay him or "reimburse" him for bringing the marijuana to defendant Tu Ngoc Tran's residence at 2915 NE Rocky Butte Road, Portland, Oregon.

Co-defendant Huy Anh Nguyen said he bought the residence at 2915 NE Rocky Butte Road, Portland, Oregon, with his brother co-defendant Kiet Anh Nguyen because defendant Tu Ngoc Tran and co-defendant Minhthy Ngoc Nguyen asked them to buy the house for them.  He said that defendant Tu Ngoc Tran and co-defendant Minhthy Ngoc Nguyen pay the mortgage every month, which he believed was around $3,900.

### B.     Argument in Support of Detention

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, the Court shall order a defendant detained if, after a hearing, it finds that no condition or combination of conditions would reasonably assure the appearance of the defendant and the safety of the community.  *Id.* § 3142(e).  The United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where, as here, there is probable cause to believe that the defendant committed a Title 21 narcotics offense, and the maximum penalty for that offense is a term of imprisonment of 10 years or more, there exists a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community.  *See* 18 U.S.C. § 3142(e).  In such a case, the burden of proof shifts to

**PAGE 10 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

the defendant to rebut the presumption of dangerousness. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir. 1986). The defendant must produce some evidence contrary to the facts presumed by statute relevant to the court's determination. The defendant must provide some credible evidence that defendant is not flight risk and does not pose danger to community in order to rebut the presumption that no condition or combination of conditions will reasonable assure appearance and community safety. *United States v. Clark*, 791 F. Supp 259 (E.D. Wash. 1992).

Even if the presumption is rebutted, however, the presumption does not disappear, but continues to carry evidentiary weight. *See United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986); *United States v. Fortna*, 769 F.2d 243, 251-52 (5th Cir. 1985).

### 1.      Defendant is a danger to the community.

Concern about the safety of the community is not limited to concerns about violence, but rather, as Congress noted, even the *risk* that a defendant will once again continue their criminal activities while on release warrants continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant *might* engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in United States v. Provenzano and Andretta, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act) (emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir. 1989) (Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society").

The defendant cannot dispute that the statutory presumption in 18 U.S.C. § 3142(e) is triggered in this case. Furthermore, the presumption in favor of detention, as both a flight risk

**PAGE 11 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

and danger, does not vanish simply because a defendant comes forward with some evidence to rebut it, but remains as one evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986).

The degree of danger posed by a charged defendant is critical. *Leon*, 766 F.2d at 81. To determine that degree and decide if a defendant should be detained, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person; the seriousness of the danger posed by the person's release; and the evidence of the individual's guilt. *Id.* Evidence of defendant's family relations, residence in the community and employment history have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community").

The court is also required to determine whether defendant has produced some credible evidence to support his contention that he is suitable for release. *United States v. Mesher*, 707 F.Supp.1224 (D. Or. 1989). In this case there is nothing to prevent defendant from misusing state medical marijuana laws, if the court does not prevent him from doing so.

### 1. The nature and circumstances of the crimes charged.

The conspiracy took place over and extended period of time and required planning and subterfuge. Defendant Tu Ngoc Tran took extensive precautions to avoid detection by law

**PAGE 12 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

enforcement. He and other members of the conspiracy took advantage of the state medical marijuana laws in two states to shield themselves from discovery. Defendant Tu Ngoc Tran and co-defendants purchased real property using straw purchasers to disguise the ownership of the property. It is also significant to the court's consideration that defendant was apprehended returning to this country from Canada.

2. **The weight of the evidence against the defendant**

There is ample evidence in this case that defendant Tu Ngoc Tran and the co-defendants were cultivating marijuana for sale. The evidence against defendant Tran for all charges is substantial. In the present form of the indictment, defendant faces a ten year mandatory minimum sentence on count 1, as well as three five year mandatory minimum sentence of counts 3, 4, and 5. There is strong evidence against him. He presents a risk of flight.

3. **Defendant's character, family and community ties, past conduct, history relating to drug or alcohol abuse and criminal history;**

Defendant has no known legitimate employment, and few ties to the community in Oregon. Following his arrest and release on state charges in December of 2010, defendant moved from the district of Oregon to Vancouver, Washington. He was arrested returning from a short trip to Canada.

4. **The seriousness of the danger posed by the person's release.**

Defendant's past conduct indicates that there is serious concern for continued involvement in drug trafficking. Defendant's past conduct indicates that there is serious concern not only for continued involvement in drug trafficking, but for additional money laundering as well. As noted above, defendant Tu Ngoc Tran's expenses far exceeded the legitimate household income. There is ample evidence of illegal proceeds, and defendant's access to such funds support a finding that defendant poses a significant flight risk.

**PAGE 13 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**

5.  **Defendant's burden to produce some credible evidence contradicting presumption**.

Once the statutory presumption is raised, the burden of production shifts to the defendant to produce some credible evidence that contradicted the statutory presumption. Evidence of defendant's family relations, residence in the community and employment history have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.")

Defendant has strong motivations to flee the district, if not the country, with no demonstrated incentive to stay.

C.  **Conclusion**

Given the nature of the charges, the strength of the evidence regarding defendant's involvement in a conspiracy to manufacture and distribute marijuana, and to launder the proceeds of his illegitimate income, his use of false or stolen documents, the government asks the court to find that defendant has failed to overcome the presumption of detention in this case.

DATED this 27th day of June 2011.

>DWIGHT C. HOLTON
>United States Attorney
>
>  /s/ Jennifer J. Martin
>JENNIFER J. MARTIN
>ROBERT NESLER, OSB#85379
>ANNEMARIE SGARLATA, OSB#06506
>Assistant United States Attorneys

**PAGE 14 - GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION**